UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
  THE CENTRAL ORTHOPEDIC GROUP,    :
  LLP,    :
          :
                 Plaintiff,    :   **MEMORANDUM DECISION AND**
          :   **ORDER**
      -against-    :
          :   24-cv-7173 (BMC)
  AETNA LIFE INSURANCE COMPANY,    :
          :
          Defendant.    :
------------------------------------------------------------ X

**COGAN**, District Judge.

This is one of eight related cases that plaintiff, a healthcare provider, has brought against

defendant Aetna Life Insurance Company or its affiliates.[1]  In this action, plaintiff seeks payment

for services rendered to three patients covered under Medicare Advantage plans sponsored by

Aetna through various commercial employers, resulting in 22 claims for payment.  The patients

assigned their rights to receive payment from Aetna to plaintiff and plaintiff is therefore pursuing

those claims.  Based on these failure to pay allegations, plaintiff brings claims for breach of

contract in violation of the Medicare Act, breach of contract in violation of ERISA, and state law

claims for breach of implied-in-fact contract, unjust enrichment, promissory estoppel, and a

declaratory judgment that the parties do not have a valid participating provider agreement.

---

[1] Plaintiff originally brought all of its claims in these eight cases in a single case.  But the number of disparate
policies at issue, the nature of the claims, and Aetna's different defenses to the claims depending on the policies
under which they were asserted made the case unmanageable.  The Court therefore directed the parties to confer and
reach agreement on how to separate the claims, and for plaintiff to commence separate cases, grouping its claims
based on the nature of the policies and the legal issues raised.

The parties did so, and plaintiff refiled the eight separate actions we have now.  But plaintiff did a poor job of
conforming the separate complaints to the particular claims at issue.  The separate complaints repeated what had
become inapplicable allegations from the original consolidated complaint, and none of them set forth the
jurisdictional basis for the complaint, in violation of Fed. R. Civ. P. 8(a), even though the jurisdictional predicate
differed between cases.  Nevertheless, in the course of the motion practice on defendant's motion to dismiss, the
Court and the parties have been able to cull those claims from the complaints that are particular to the group of
policies that pertain to each action.

First, as to plaintiff's claim under ERISA, the parties do not dispute that the health care plans at issue in this case are individual Medicare Advantage plans, not plans issued by employers. "By its terms, ERISA governs employee benefit plans established or maintained by an employer or an employee organization." Saini v. Cigna Life Ins. Co. of New York, No. 17-cv-1922, 2018 WL 1959551, at *5 (S.D.N.Y. April 24, 2018) (quotation omitted). ERISA thus does not apply to these Medicare Advantage plans, and plaintiff's claim under ERISA is dismissed.

Second, as to the state law claims, Aetna has persuasively argued that the Medicare Act preempts those claims and, indeed, plaintiff has not responded to Aetna's argument.[2] The Medicare Act contains an express preemption clause: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part." 42 U.S.C. § 1395w-26(b)(3). As noted, plaintiff has not cited me to any cases holding that this preemption provision does not mean what it says. See e.g., Potts v. Rawlings Co., 897 F. Supp. 2d 185, 199 (S.D.N.Y. 2012) (state anti-subrogation laws preempted by Medicare Act); Meek-Horton v. Trover Solutions, Inc., 915 F. Supp. 2d 486 (S.D.N.Y. 2013) (plaintiffs' state law claim for reimbursement of medical benefits was preempted by the Medicare Act where plaintiffs were enrolled in Medicare Advantage plans, and noting that courts have interpreted Medicare Act's preemption provision "broadly").

---

[2] In defending its unjust enrichment claim, plaintiff asserts in passing that neither that claim nor its state law implied-in-fact contract or promissory estoppel claims are subject to ERISA preemption. The assertion is a non-sequitur, since the Medicare Advantage polices are not subject to ERISA and ERISA preemption is not at issue.

Plaintiff's ERISA claim appears to be a carry-over from the original consolidated complaint, as there is no dispute between the parties that the insurance policies at issue here were not issued pursuant to an ERISA plan. Plaintiff's confused pleadings and brief are part of plaintiff's counsel's lack of attention to separating the claims and arguments and placing them in the case in which they belong. See n.1, supra.

And as shown in the discussion below about the intricacy of presenting claims under the Medicare Act, that is the only result that makes sense. If a patient or provider, by bringing state law claims, could simply side-step that administrative process for presenting a claim for payment, and its narrow standard of judicial review from the denial of the claim, then the scheme set forth in the Medicare Act would itself be effectively preempted by the state law claims.

Accordingly, plaintiff's state law claims are dismissed as preempted.

As to plaintiff's Medicare Act claim, the issue is exhaustion of administrative remedies. Plaintiff recognizes its obligation to plead exhaustion, as the complaint includes a section entitled "The Practice Has Exhausted Its Administrative Remedies." It alleges, in its entirety:

> 86. For months, and in some cases, years, the Practice has attempted to enter a meaningful dialog with Aetna to obtain prompt and proper payment for all the outstanding claims on Exhibit A.
>
> 87. Indeed, in all cases, the claims on the attached spreadsheet were subject to appeals submitted by the Practice to Aetna, to obtain appropriate payment for the claim. The Practice exhausted all available appeal efforts.
>
> 88. As alleged above, the Practice routinely calls Aetna to follow up on unpaid or underpaid claims, and follows all instructions provided by Aetna, whether verbally or in writing, regarding the timing and form of appeals the Practice must take to have denied or underpaid claims reviewed and paid at the appropriate rate.
>
> 89. Despite this, the Practice's claim appeals submitted to Aetna have either been improperly denied or have been ignored altogether.
>
> 90. In these communications, Aetna has never alleged that any of the individual patients for which the Practice seeks compensation are not Aetna Members, and so has waived that argument.
>
> 91. Additionally, Aetna has engaged in conduct that has rendered additional appeals or attempted appeals by the Practice futile. Such conduct includes, without limitation: (a) refusing to provide the specific reason or reasons for the denial or underpayment of claims; (b) refusing to provide the specific plan provisions relied upon to support its denials or underpayments; (c) refusing to provide the specific rule, guideline or protocol relied upon in making the decisions to deny or underpay claims; (d) refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate

3

diagnosis/treatment codes; (e) refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; (f) refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that appeals procedure; (g) refusing to provide the Practice with the documents and information relevant to Aetna's denial of the claims; and (h) refusing to timely issue required notifications that the claims have been denied or underpaid.

92.   Accordingly, the Practice's efforts to obtain proper payment for the claims annexed hereto have fallen on deaf ears.   All that the effort has produced are vague letters and promises of proper payment at some uncertain point in the future, endless requests and re-requests for documents supporting the claims, and vague allegations or intimations regarding valid defenses to the outstanding claims, which never seem to materialize.

93.   Accordingly, having exhausted all reasonable administrative remedies and appeals – to the point where further administrative actions and appeals would be futile – the Practice has been forced to commence this lawsuit.

Aetna's argument is that this does not constitute exhaustion.   It notes that an action based on an unpaid Medicare claim cannot be brought in federal district court until the Medicare Act's statutorily mandated administrative remedies have been exhausted.   Under the Medicare Act, there are five separate steps a claimant must take to exhaust its claim:

The first level of review involves an initial determination by the Medicare Advantage organization itself . . . as to the benefits an enrollee is entitled to receive under the plan.  42 C.F.R. § 422.566(a). . . .  The ensuing levels of review include reconsideration by the Medicare Advantage organization, §§ 422.578, 422.582; reconsideration by an independent outside entity, § 422.592; a hearing before an ALJ if the amount in controversy is $100 or more (adjusted for inflation), § 422.600; and review by the Medicare Appeals Council, § 422.608.

Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc., 30 F.4th 905, 913 (9th Cir. 2022) (also noting that "a provider may pursue these administrative remedies as an enrollee's assignee if it waives the right to demand payment from the enrollee" (citing 42 C.F.R. §§ 422.566(c)(1)(ii), 422.574(b))).

After an adverse determination by the Medicare Appeals Council, and only then, can a claimant seek review of the Appeals Council's determination in federal district court.  42 U.S.C.

§ 1395w-22(g)(5); 42 C.F.R. § 422.612; see, e.g., Heckler v. Ringer, 466 U.S. 602, 614-15 (1984) (42 U.S.C. § 405(h) makes 42 U.S.C. § 405(g), the Social Security program's judicial review provision, "the sole avenue for judicial review for all claims arising under the Medicare Act." (cleaned up)); 42 U.S.C. § 1395ii (making § 405(h) applicable to the Medicare Act); 42 U.S.C. § 1395w-22(g)(5) (expressly incorporating § 405(g) into the Medicare Advantage context).  And it is important to note that when a district court reviews the Appeals Council's determination, it applies the same "substantial evidence" or "arbitrary and capricious" standard used to review disability determinations by the Commissioner of Social Security or other administrative agencies under the Administrative Procedures Act.  See Visiting Nurse Ass'n of Brooklyn v. Thompson, 378 F. Supp. 2d 75, 86 (E.D.N.Y. 2004).

Although the complaint's section on "Exhaustion" contains a lot of words, virtually none of them tie into the five-step legal requirements for exhaustion.  The closest the complaint gets is the conclusory assertion that "[t]he Practice exhausted all available appeal efforts" in paragraph 87, and the vague assertion in paragraph 89 that "the Practice's claim appeals submitted to Aetna have either been improperly denied or have been ignored altogether."  With respect to this paragraph 89, "claim appeals submitted to Aetna" presumably refers to the second step, i.e., requests for reconsideration; there is no reason to think that in even one of the 22 claims at issue, plaintiff has appealed to the "outside, independent entity," let alone an Administrative Law Judge, let alone the Medicare Appeals Council, all of which the statute requires.  For plaintiff to assert "futility" when it has completed, as to each claim, no more than two of the five steps is simply not a plausible conclusion.

As to claims that plaintiff alleges Aetna has "ignored," plaintiff asserts that Aetna is estopped from raising a lack of exhaustion.  But because plaintiff's listing of the 22 claims

attached to its complaint does not allege facts showing exhaustion as to any let alone all claims, it is impossible to tell how many claims have been "ignored."

It was plaintiff's choice to sue on 22 claims in one action.  Use of the word "ignored" for some unspecified number of claims does not create a plausible assertion of waiver, estoppel, or futility that relieves plaintiff of the need to exhaust claims.  The Supreme Court has made it clear that the mere assertion of legal conclusions like "waiver" or "estoppel," without factual allegations that plausibly support them, carry no weight in evaluating the adequacy of a pleading. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This is particularly appropriate in considering exhaustion because it is a threshold requirement, in the absence of which the case cannot proceed.  Ringer, 466 U.S. at 605.  And it remains plaintiff's burden to adequately plead exhaustion.  See Munroe v. Aetna Medicare, No. 23-cv-1313, 2024 WL 1266359, at *1 (2d Cir. March 26, 2024) (summary order).

Plaintiff has requested leave to amend in the event Aetna's motion is granted.  It has not identified or specified what amendments it would offer, which itself is enough reason to deny leave to amend.  See Arnold v. KPMG LLP, 334 F. App'x 349, 352-53 (2d Cir. 2009) (affirming denial of leave to amend because "Plaintiff failed to identify those facts that would save his complaint, should he be granted leave to amend, with sufficient specificity"); Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." (citation omitted)).  However, considering that leave to amend is to be freely granted, see Fed. R. Civ. P. 15(a)(2), plaintiff is granted leave to amend solely to specify how exhaustion has occurred as to each of the 22 claims.

If plaintiff chooses to use this opportunity, it must take care to adhere to its obligations under Fed. R. Civ. P. 11.  First, under the Medicare Act, plaintiff must show that, for each claim, it has exhausted its administrative remedies or is excused from having done so.  Thus, plaintiff cannot use its amalgamation of claims in one action to avoid its obligation to plead exhaustion or excuse from the exhaustion requirement as to each claim.  Second, if, as appears from the complaint, plaintiff has pursued none of the claims beyond the second step (if that) of the five-step claims exhaustion process, and is not excused from doing so, then none of the claims have been exhausted, and plaintiff cannot file an amended complaint claiming exhaustion in good faith.  Third, even if plaintiff pursued one or more of the claims to the third step or beyond of the exhaustion process and the claim was denied, plaintiff must set forth facts showing that a plausible inference can be drawn as to whether other claims that were not so pursued would also have been denied. For example, if twenty out of the twenty-two claims were fully exhausted, perhaps it would be a plausible inference that the other two would have been denied as well.  But if only three claims were denied after full exhaustion and no effort has been made to exhaust the other nineteen, no inference of futility could be drawn absent additional facts.

If plaintiff can meet its pleading obligations within these parameters, the amended complaint shall be filed within 20 days from the docketing of this decision.  If plaintiff does not file an amended complaint within 20 days, the case will be dismissed.

**SO ORDERED.**

_Brian M. Cogan_
_____
U.S.D.J.

Dated: Brooklyn, New York
       September 9, 2025

7